[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15339
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-04189-ODE


SANDRA WOMACK-SANG,

Plaintiff - Appellant,

versus

PUBLIX SUPER MARKETS, INC.,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 19, 2014)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Appellant Sandra Womack-Sang (Womack) appeals the district court's decision to grant appellee Publix Super Market's (Publix) motion for summary judgment. On appeal, Womack argues that: (1) there are factual issues as to whether the instant case was truly a "rainy day" slip and fall case; (2) even if it was proper for the trial court to categorize her case as a "rainy day" slip and fall case, the court erred in concluding as a matter of law that the water accumulation in the Publix vestibule was not "unusual; and (3) outside the "rainy day" context and under normal premises liability analysis, the district court erred because it completely ignored the record evidence demonstrating Publix's constructive knowledge of the water accumulation.[1] After review of the parties' briefs and the record on appeal, we affirm the district court's decision granting summary judgment.

## I.    BACKGROUND

On December 28, 2007, Womack entered a Publix grocery store in Suwanee, Georgia. It was just before 4:00 p.m. It was rainy that day, with nearly two inches of rain falling in Atlanta. While the rain let up some in the afternoon, the weather was foggy and misty throughout the entire day. Womack entered the front vestibule of Publix, walking across sixteen feet of carpet as she proceeded toward the area where the shopping carts were kept. She later testified that as she took the

---

[1] Because we find that the district court correctly applied the "rainy day" presumptions of liability, we need not address Womack's third argument.

approximately ten steps across the carpeted floor toward the shopping carts, she did not notice any accumulation of water, debris, or foreign substance on the floor. As she approached the shopping carts, Womack slipped and fell on the tile floor. She testified that the front and back of her pants got wet when she fell. Womack said that after she fell, some of the clear liquid substance remained on the floor. It was difficult—although not impossible—to see from a standing position. Womack also stated that she could not have seen the liquid even if she had looked down.

Womack further testified that she could not describe the wetness, the amount of wetness, or the area around it. She said that she did not know where the water came from, how long it had been on the floor, or whether she had tracked it in on her shoes. Womack stated that after she stood up and went to retrieve a shopping cart, she did not see any other areas of wetness in the front entrance vestibule. Womack also did not notice any wet floor mats or wet floor warning signs in the vestibule area at the time the accident occurred.

After her fall, Womack reported the incident to a Publix Customer Service Manager. As Womack filled out the incident report, another Customer Service Manager inspected the incident scene—she testified that her inspection did not reveal any water or liquid on the floor.

Shortly after the inspection, two other Publix employees went to the vestibule area with a mop and a wet floor warning sign. The employees were not

3

instructed to mop the floor or put up the warning sign. They had just heard that someone had fallen so they brought the mop and sign out to the area of the incident. Based on their inspections throughout the day, the employees testified that they did not mop the floor on December 28 because it did not need mopping.

## II.    STANDARD OF REVIEW

"We review the grant of summary judgment de novo, considering all evidence and reasonable inferences drawn therefrom in the light most favorable to the non-movant." *Waters v. Miller*, 564 F.3d 1355, 1356 (11th Cir. 2009).

## III.    DISCUSSION

Under Georgia law, any owner or occupier of land who, "by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose . . . is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." Ga. Code Ann. § 51-3-1. "[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 493 S.E.2d 403, 414 (Ga. 1997). "Moreover, as [the Georgia] Supreme Court has . . . reiterated, there can be no recovery in a premises liability case without evidence tending to show that the

4

owner/occupier has *superior knowledge* of the perilous instrumentality and the danger therefrom to persons going upon the property." *Hayward v. Kroger Co.*, 733 S.E.2d 7, 11 (Ga. Ct. App. 2012) (internal quotation marks omitted). The Georgia Supreme Court has further specified that "[s]tore proprietors are not liable to patrons who slip and fall on floors made wet by rain conditions unless there has been an unusual accumulation of water and the proprietor has failed to follow reasonable inspection and cleaning procedures." *Walker v. Sears Roebuck & Co.*, 629 S.E.2d 561, 564 (Ga. Ct. App. 2006).

Womack first argues that it was improper for the district court to categorize her case as a rainy-day slip and fall case. We disagree. As the district court aptly found, Womack's argument is belied by the application of the "rainy day" rational in numerous cases that entail rainy conditions on the day in question, but not at the time of the incident. *See e.g.*, *Hayward*, 733 S.E.2d at 11 (applying rainy-day principles even though it had stopped raining in the early afternoon when the incident took place, because it had been raining heavily for days, including during the morning of the incident); *Walker*, 629 S.E.2d at 562 (applying rainy-day standards where "[i]t had been raining earlier that day in the morning, and it was still damp outside when [the plaintiff] entered the store."). Here, it is undisputed that it was raining heavily on the morning of December 28, 2007. The certified weather reports admitted in the district court also showed that it had been misting

5

and cloudy for the rest of the day. Accordingly, this case fits comfortably within the parameters of the "rainy day" slip and fall cases as established by the Georgia courts.

Womack next argues that even if it was proper for the trial court to categorize her case as a rainy day slip and fall case, the court erred in concluding as a matter of law that the water accumulation was not "unusual." *See Hayward*, 733 S.E.2d at 11–12 (proprietors are "not liable to patrons who slip and fall on floors made wet by rain conditions unless [1] there has been an unusual accumulation of water and [2] [the proprietor] has failed to follow reasonable inspection and cleaning procedures."). The district court found that Womack was unable to point to any evidence of unusual accumulation of water. We agree. Womack admitted that she did not see the wetness as she was walking towards the shopping cart area in the Publix vestibule. Further, she was unable to describe the amount of water remaining on the floor after she stood up. Although she claimed she was able to see moisture on the floor from a standing position, she conceded that the wet spot was difficult to discern and that she could not have seen it even if she had looked down. She further testified that she did not notice any other wet spots in the vestibule area and acknowledged she herself could have tracked in the water on her shoes.

6

In addition, a few minutes before Womack's fall, the floor was inspected by a Customer Service Manager, who stated that she did not see any debris or foreign substances, including water, on the floor of the vestibule area. A few minutes after Womack's fall, the floor was inspected by another Customer Service Manager and two other Publix employees. All stated that the floor was clean and dry. Womack's contention that the floor was dry because most of the rainwater had been absorbed by her clothing is inconsistent with her statement that, after she got up from the floor, she was actually able to see the wet spot. Accordingly, Womack has not established specific facts showing there is any evidence of unusual accumulation of water in the vestibule area. *See Hayward*, 733 S.E.2d at 11–12.

The district court did not err because no jury question exists as to whether there was an unusual accumulation of water in the Publix shopping cart vestibule. The district court's order is **AFFIRMED.**