**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 22, 2018**

# In the Court of Appeals of Georgia

A17A1534. KEISHA, LLC v. DUNDON.

RAY, Presiding Judge.

Keisha, LLC, which owns and operates a Sunoco gas station in Richmond Hill, Ga., filed this interlocutory appeal from the trial court's denial of its motion for summary judgment in a slip-and-fall case brought by William Dundon. Keisha argues that the trial court erred because: (1) Keisha lacked actual and constructive knowledge of the hazard; (2) Dundon assumed the risk of his injury; (3) the rescue doctrine does not apply; and (4) Dundon's derivative negligent hiring and negligent retention claims fail as a matter of law because his underlying negligence claim fails. For the reasons that follow, we agree and reverse.

> On appeal from a grant [or denial] of summary judgment, we conduct a de novo review, and we view the evidence and the inferences drawn from it in the light most favorable to the nonmoving party. A defendant

demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.

(Citation omitted.) *Adamchick v. Cracker Barrel Old Country Store, Inc.*, 281 Ga. App. 677, 677 (637 SE2d 44) (2006).

The evidence shows that Dundon stopped at the Sunoco station to get gasoline on April 23, 2014. Dundon's wife told him that a patron at a different pump needed help because the pump "was spilling gas all over the place." Dundon saw gas spilling, ran around the corner of the car to help the patron, and slipped on the gas, which had formed a "fairly big" puddle occupying three-to-four feet. He fell about one-third of the way across the puddle, and he deposed that he fell and injured his elbow five-to-ten seconds after he first saw the spray of gasoline. Dundon also deposed that he saw the gasoline spilling and knew that the ground could be slippery because of the spill.

The patron whom Dundon attempted to help, Sarah Moore, deposed that 15-to-20 seconds elapsed from the time the gasoline began spilling and the time Dundon fell. He got up, however, and helped Moore shut off the pump.

Moore had intended to pump gas for her truck, which was pulling a 29-foot camper, but when she lifted the nozzle "without touching the lever[,]" gas began spraying out, and she was unable to turn it off. At the time of the incident, the gas station owner/manager, Mrudula Patel, was inside the gas station. Her view of the spillage area was blocked by Moore's vehicle and Dundon's vehicle. There is no evidence that a gas station employee was outside at the time of the spill or Dundon's fall.

Dundon's wife deposed that she went into the store and told Patel, "there's a woman having a problem at the first pump." Patel did not come out, so she "went back and [she] said there's gasoline going all over the place," and Patel then came out demanding that someone pay for the gas. Patel shut off the gasoline from inside the store.

Dundon deposed that he did not know what caused the pump to spray gasoline and had no knowledge of prior or subsequent problems with the pumps. Moore also deposed that she did not know what caused the pump to spray gas. Patel deposed that although the gas station keeps no written maintenance logs, an employee conducts daily, routine maintenance checks of the fuel pumps and that her husband performed such a check on the date of the incident. Another company, located across the street

3

from the gas station, also does maintenance checks two or three times per week. Patel also deposed that no prior or subsequent similar spillage incidents had occurred.

Dundon sued the gas station to recover for his injuries, alleging that it was negligent in "failing to provide sufficient warning of the subject dangerous substance, by failing to remove the dangerous substance, by failing to use ordinary care in preventing hazardous conditions[,] . . . and by hiring and retaining . . . unsafe [John Doe] employee(s)[.]" Keisha moved for summary judgment, arguing that there was no evidence of the gas station's superior knowledge, that Dundon had assumed the risk of his injuries, and that no evidence supported the negligent hiring/retention claim. The trial court denied Keisha's motion in an order which did not reveal its reasoning, and Keisha filed the instant appeal.

Under OCGA § 51-3-1, where an owner or occupier of land induces others to visit the premises for any lawful purpose, he is liable to those persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. To prevail on a slip-and-fall claim, the plaintiff must show: (1) that the premises owner had actual or constructive knowledge of the hazard, and (2) that the plaintiff lacked knowledge of the hazard, despite an exercise of ordinary care, because of actions or conditions within the owner's control. *McLemore v. Genuine Parts Co.*,

4

313 Ga. App. 641, 643 (722 SE2d 366) (2012). The plaintiff's evidentiary burden as to the second prong of the test does not arise until the owner shows that the plaintiff was negligent, that is, that the plaintiff had knowledge of the hazard equal to or superior to the owner's, or that the plaintiff would have had such knowledge had he exercised ordinary care for his own safety. Id.

1. Keisha argues that the trial court erred in denying its motion for summary judgment because the undisputed evidence shows that Dundon had actual and superior knowledge of the hazard, and because there is no evidence that Keisha had actual or constructive knowledge of the spill.

As outlined above, there is no evidence, nor does Dundon argue on appeal, that Keisha had actual knowledge of the spill. See *Watson v. Williams Travelcenter, Inc.*, 265 Ga. App. 362, 364 (1) (a) (593 SE2d 908) (2004) (where nozzle popped out of tank and spilled gasoline on which plaintiff immediately fell, gas station had no actual knowledge of this "instantaneous hazard"). Therefore, the issue is whether Keisha had constructive knowledge.

> Constructive knowledge can be proved by . . . evidence that a store employee was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard[, or] . . .

by proof that the foreign substance was on the [ground] for a length of time sufficient for knowledge of it to be imputed to the defendant.

(Citation and punctuation omitted.) *Bradley v. Winn-Dixie Stores, Inc.*, 314 Ga. App. 556, 557, n. 7 (724 SE2d 855) (2012). Further, constructive knowledge may be shown "by evidence that the proprietor failed to exercise reasonable care in inspecting the premises." (Footnote omitted.) *Drew v. Istar Financial, Inc.*, 291 Ga. App. 323, 326 (2) (661 SE2d 686) (2008). While Dundon argues that Keisha's inspection procedures were inadequate, to show constructive knowledge in this manner "the plaintiff must show the defendant could have found and removed the hazard." *Blake v. Kroger Co.* 224 Ga. App. 140, 142 (1) (480 SE2d 199) (1996), disapproved on other grounds, *Robinson v. Kroger Co.*, 268 Ga. 735, 747 (493 SE2d 403) (1997). See also *Drew*, supra at 327 (2) (plaintiff "must present evidence showing that the hazard had been allowed to exist for some length of time" such that defendant had a reasonable time to inspect and remove it) (punctuation and footnote omitted). Here, the undisputed evidence showed that Patel's view of the spill was blocked by various vehicles, and that the substance was on the ground for 20 seconds *at most*, and only 5 or 10 seconds by Dundon's own estimation, when he fell. Dundon himself conceded that there was nothing Patel could have done to prevent his fall.

Although Dundon argues that the gas station failed to follow reasonable inspection procedures, "even if that were true, [Dundon] has failed to show that a reasonable inspection would have revealed any problem with the fueling equipment he used." (Footnote omitted.) *Watson*, supra at 365 (1) (b). Accord *Chastain v. CF Ga. North DeKalb, L. P.*, 256 Ga. App. 802, 803 (569 SE2d 914) (2002) (constructive knowledge may be inferred where evidence exists that owner lacked reasonable inspection procedures, but appellate court need not reach that issue if no evidence exists that substance could have been discovered during a reasonable inspection; therefore, "no inference arises that defendants' failure to discover the defect was the result of any alleged failure to inspect") (citation omitted). As outlined above, Patel deposed that there had been no prior, similar incidents with the pump, and Dundon also deposed that he had no information about prior problems with the pump. See *Watson*, supra (no constructive knowledge on part of gas station where plaintiff admitted he had no information that anything was wrong with the pump). Further, there is no evidence that the pump or nozzle was defective. To prevail on a faulty equipment argument, there must be some evidence, other than that of the spill itself, that the equipment malfunctioned. Moore, the customer who had attempted to pump the fuel, deposed that she did not know why the fuel spewed out and that a prior

customer could have left the trigger lock in place. See *Quiktrip Corp. v. Fesenko*, 228 Ga. App. 287, 288 (1) (491 SE2d 504) (1997) (reversing trial court's denial of summary judgment where fuel nozzle continued to spill gas after plaintiff had filled tank, but no evidence existed to support allegations that pump was defective or that nozzle malfunctioned). No such evidence has been presented here. Further, it is undisputed that Dundon had actual knowledge of the spill. "[T]here is no obligation to protect the invitee against dangers or hazards which are known to him or which are so obvious and apparent he may reasonably be expected to discover them." (Citation and punctuation omitted.) *Forest Cove Apartments, LLC v. Wilson*, 333 Ga. App. 731, 737 (776 SE2d 664) (2015). Accord *Courter v. Pilot Travel Centers, LLC*, 317 Ga. App. 229, 231 (730 SE2d 493) (2012) (even if gas station owner had constructive knowledge of spill, plaintiff saw the mixture of diesel fuel and water prior to stepping on it and knew the combination was slippery; thus, summary judgment in favor of station was proper).

2. Because we determined in Division 1, supra, that there is no evidence of the gas station's constructive knowledge of the spill and, therefore, no cause of action for negligence, we need not reach the issue of whether the rescue doctrine applies. "Liability in rescue cases is predicated upon a defendant's conduct in negligently

8

creating the peril which inspired the attempted rescue. [T]he doctrine has no application where the defendant's conduct was not negligent, or a tortious wrong." (Citation and punctuation omitted.) *Montega Corp. v. Grooms*, 128 Ga. App. 333, 340 (8) (c) (196 SE2d 459) (1973). See *Player v. Bassford*, 172 Ga. App. 135, 135 (322 SE2d 520) (1984) (where no evidence shows that defendant in a slip-and-fall case had actual or constructive knowledge, there is no cause of action for negligence).

3. Finally, Keisha argues that because Dundon's underlying negligence claim fails as a matter of law, his derivative claim for negligent hiring and retention also fails. We agree. A claim for negligent hiring or retention essentially is derivative and only survives summary judgment to the extent that the underlying substantive claims survive. See *Hospital Auth. of Valdosta/Lowndes County v. Fender*, 342 Ga. App. 13, 23 (2) (802 SE2d 346) (2017).

*Judgment reversed. Dillard, C. J., and Self, J., concur.*

9